# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EVA AYALLA,

      **Plaintiff,**

      **v.**

NATIONAL AMERICAN POSTAL
WORKERS UNION, AFL-CIO and
KANSAS KAW VALLEY APWU,
LOCAL 238,

      **Defendants.**

Case No. 2:24-cv-02352-HLT

## MEMORANDUM AND ORDER

Plaintiff Eva Ayalla[1] was a union shop steward who handled grievances on behalf of union members. She claims that her local and national unions breached the duty of fair representation (DFR) after she retired by failing to handle the outstanding grievances she had filed as a steward and to give her status updates. And she claims that the unions discriminated against her based on her age by removing her from her position before she retired and denying her certain privileges.

The Court already dismissed the national union. Doc. 47. Now the local union (Defendant Kansas Kaw Valley APWU, Local 238) moves to dismiss or for summary judgment. Doc. 74. The Court grants the motion because (1) Plaintiff failed to timely sue for DFR and has not shown tolling is warranted or met the elements of a DFR claim on its merits; and (2) Plaintiff has presented no evidence that Local 238's reason for removing her as union steward was pretextual and, in any

---

[1] Plaintiff proceeds pro se. The Court liberally construes Plaintiff's pro se filings and holds them to a less stringent standard than those drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id.*

event, a portion of the claim is not proper under the ADEA. Local 238 is entitled to summary judgment.

## I.    PREDICATE FACTUAL ISSUES

The Court first addresses a few matters that have complicated resolution of the pending motion. The briefing has been somewhat confusing. A short timeline may help explain the situation.

- October 29, 2025: The magistrate judge entered the pretrial order.

- November 7, 2025: Local 238 filed its motion to dismiss or for summary judgment, memorandum in support, and the notice to a pro se litigant who opposes summary judgment, as required by D. Kan. Rule 56.1(d).

- November 10, 2025: The Court entered an order advising Plaintiff of her deadline to respond to the motion (November 28), as well as the potential consequence for failing to respond. The Court also advised Plaintiff that the page limit for a response to a motion to dismiss is fifteen pages.

- November 22, 2025: Plaintiff moved for an additional seven days to file her response brief.

- November 24, 2025: The Court granted Plaintiff's motion, gave her until December 4 to respond, and clarified its earlier note on page limits. The Court advised Plaintiff that because Local 238's motion also alternatively sought summary judgment, Plaintiff's page limit was forty pages instead of fifteen. The Court encouraged Plaintiff to review the rules before preparing her response.

- December 3, 2025: Plaintiff asked for an additional five days to respond to the motion because of an unexpected snowfall that interfered with her ability to timely respond. The Court granted Plaintiff until December 9.

- December 8, 2025: Plaintiff asked for an additional three days due to technical difficulties. The Court granted Plaintiff until December 12.

- December 12, 2025: Plaintiff asked for three more days. The Court granted Plaintiff until December 15.

- December 15, 2025: Unbeknownst to the Court, Plaintiff sent an email to the incorrect address, apparently for filing. She received an automatic email response that said:

   > ***This is not a monitored email box. You must resend this message
   > to the appropriate clerk's office or chambers email account.***

It appears this email may have had a 43-page document attached.

- December 17, 2025: Two days past her deadline, Plaintiff filed a document titled "Plaintiff's Declaration and Memorandum in Opposition to Defendant, Kansas Kaw Valley APWU, Local 238's Motion for Summary Judgment/Dismissal of Her Amended Complaint." Doc. 88. That same day, Plaintiff also filed two documents titled "Plaintiff's Motion to Add Supplemental Declaration in Opposition to Defendant, Kansas Kaw Valley APWU, Local 238's Motion for Summary Judgment/Dismissal of Her Amended Complaint" (Doc. 89) and "Plaintiff's Motion to Submit Supplemental Exhibits to Her Response in Opposition to Defendant, Kansas Kaw Valley, APWU, Local 238 Motion to Dismiss and for Summary judgment of Her Complaint" (Doc. 90). Plaintiff attached 27 pages of exhibits to Doc. 90. The exhibits are numbered 50-62, but Plaintiff did not attach any exhibits numbered 1-49. The Court ordered Local 238 to respond to all three documents when replying to Plaintiff's response.

- January 9, 2026: Local 238 filed its reply brief after asking for and receiving additional time to respond because of the holidays and a long-standing planned vacation. Local 238 attached to its brief a copy of Plaintiff's December 15 email that the Court did not receive, along with documents that Plaintiff gave Local 238 but did not file: (1) a fourteen-page response brief, (2) a two-page motion to submit supplemental exhibits, (3) "Eva Ayalla, Plaintiff Pro Se's, Opposition to Facts Stated in Affidavit of Michelle A. Fitzpatrick," (4) Plaintiff's own affidavit, (5) a copy of a previously-filed motion to amend her complaint, and (6) 51 additional pages of exhibits, which appear to be roughly numbered 1-37 and 44. Docs. 94-1, 94-2. None of these documents except Plaintiff's motion to amend her complaint had previously been filed with the Court.

- January 16, 2026: Plaintiff asked for additional time to respond to Local 238's reply brief. The Court denied her motion because sur-replies are not allowed absent leave of court.

- January 20, 2026: Plaintiff filed three more documents despite the Court's order. The first (Doc. 97) appears to be the initial fourteen pages of the exhibit that Local 238 submitted on January 9 (Doc. 94-2), likely meant to be Plaintiff's response brief to Local 238's motion. The second (Doc. 98) is titled a motion to submit supplemental exhibits. It appears to roughly mirror page numbers 15-43 of Doc. 94-2. And the third (Doc. 99) includes additional copies of an eight-page affidavit and a seven-page response to Michelle A Fitzpatrick's affidavit. The initial eight pages are the same as page numbers 22-29 of Doc. 94-2. The last seven pages mirror page numbers 18-21 of Doc. 94-2.

This series of events raises a couple of issues. First, does the Court treat Local 238's motion as a motion to dismiss or one for summary judgment? The Court treats it as one for summary judgment. Local 238 filed its motion after the pretrial order was entered. The pretrial order effectively replaces the complaint and controls the scope of the case moving forward. The

allegations in Plaintiff's complaint are no longer at play. The Court therefore analyzes Local 238's alternative request for summary judgment.

Second, which filings does the Court consider for determining the facts and arguments? The only filings properly before the Court for consideration are Local 238's motion, memorandum in support, and exhibits (Docs. 74 and 75 with attached exhibits, filed November 7, 2025); Plaintiff's response and the two additional documents filed December 17, 2025 (Docs. 88, 89, and 90); and Local 238's reply brief and exhibits (Doc. 94 with attached exhibits). Anything else Plaintiff either (1) neglected to timely file after being advised that she had sent them to the incorrect email address, or (2) untimely filed after being denied leave to file a surreply. Practically speaking, this means that all of Local 238's proposed uncontroverted facts are deemed uncontroverted because Plaintiff does not address them in Docs. 88, 89, or 90.

But even if the Court were to give Plaintiff the benefit of the doubt and consider the brief and exhibits that Local 238 attached to Document 94 (which, again, had never been in the record before Local 238 attached them), Plaintiff's efforts do not change the outcome of the case. Plaintiff agreed to about half (fifteen out of twenty-nine) of Local 238's facts and improperly controverted those she attempted to controvert. She either failed to cite any evidence at all (for eight of the purported controverted facts), pointed to immaterial or irrelevant evidence (for two or three), or offered no response (to three). What appears to be the brief she intended to file in response to Local 238's motion (Doc. 94-2 at 1-14) is really an unconventional mixture of a reprint of Local 238's motion, plus commentary that is intermittently handwritten or typed by Plaintiff. She addresses a few of Local 238's arguments but abruptly stops. She does so in a conclusory manner. *See. e.g.*, Doc. 94-2 at 11 ("This appears to be incorrect."); *id.* ("No fraud claimed on 12/27/23 Incorrect."); *id.* at 12 ("This charge is confused with a separate distinct charge of Fraudulent Concealment

related to my dropped grievances."). And the evidence Plaintiff submitted is not in a form that would be admissible at trial. Plaintiff's exhibits lack foundation and authentication and are not properly supported by an affidavit or declaration. Simply stated, even if the Court considers the documents attached to Local 238's reply brief (that Plaintiff then filed in part later, after the Court denied leave to file a sur-reply), they do not make a difference. Local 238's facts are thus deemed admitted for these two alternative reasons.

## II.    BACKGROUND[2]

Plaintiff was a union shop steward. She filed and administrated grievances on behalf of union members for the Shawnee Mission Post Office. Plaintiff was appointed by Local 238 as steward, but it was an unpaid position of service. She did, however, receive quarterly dues refunds.

Steps One and Two of the contractual grievance process are handled at the local level. Unresolved grievances can be appealed at Step Three to the national level for further processing. The National Business Agent, Jeffrey Beaton, handled the appeal of grievances to the national level (not Local 238).

Plaintiff filed five grievances on behalf of about fifteen custodians over several years. These are referred to as the "Line H" grievances. They protested the postal service's failure to hire additional custodians. Plaintiff asked that USPS pay $800,000 per year for the understaffing because that is how she calculated how much USPS saved by not hiring.

Plaintiff's Line H grievances were not settled at Step Two and were appealed. But Plaintiff did not believe that Beaton was informing her of their status on appeal. The union eventually appointed a second steward to serve with Plaintiff.

---

[2]    For purposes of summary judgment, the following facts are uncontroverted or recited in the light most favorable to the nonmoving party.

Michelle A. Fitzpatrick is the president of Local 238. She learned in February 2021 that Plaintiff was not communicating with the members she represented. Fitzpatrick testified by affidavit that she removed Plaintiff from her steward position in July 2022 because of her lack of responsiveness. Once Fitzpatrick removed Plaintiff, the second steward remained in the position. She was 27 years old.

Plaintiff admits that there were reasons other than age why she was removed as steward. Plaintiff believed she was decertified because "there had been no one experienced in maintenance issues and also due to animosity that had grown over the last few years related to her complaints of lack of representation for Maintenance employees by [Fitzpatrick and Deaton]." Plaintiff annoyed Fitzpatrick and thought she challenged Fitzpatrick's ego. Plaintiff testified that once Fitzpatrick called her an "old lady." But she did not think that Fitzpatrick disliked her or hated her.

Plaintiff inquired about the status of the grievances she had filed after she was decertified. Beaton assured Plaintiff that he would treat Line H grievances the same as other grievances.

Plaintiff retired from USPS on November 30, 2022. She contends that after her retirement Local 238 and the national union failed to process the Line H grievances or update her on their status. She claims that Beaton and his boss fraudulently withheld information about the grievances. She also requested to inspect the financial records of Local 238 but was denied access. She complained to the Department of Labor but was informed she had no recourse because she was not a member of Local 238 at the time of her request.

Plaintiff filed a charge of discrimination against Local 238 with the EEOC on March 13, 2023. She then filed an unfair labor practice charge with the National Labor Relations Board (NLRB) against the national union on July 18, 2023. Plaintiff charged that the national union failed to provide her information on the status of the grievances she had filed. She later filed an unfair

labor practice charge against Local 238 on December 27, 2023. Plaintiff claimed in that charge that Local 238 breached its duty of fair representation because it failed to keep her apprised of the status of the grievances she had filed.

The EEOC issued a right to sue letter on May 31, 2024. Plaintiff filed her original complaint on August 12, 2024.

## III.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts applying this standard view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

## IV.    ANALYSIS

Plaintiff asserts claims for DFR and age discrimination.[3] She contends that Local 238 breached its duty of fair representation when it failed to handle the grievances she filed as a steward and failed to update her with their status. She contends Local 238 discriminated against her based

---

[3]    Plaintiff also attempted to add a separate claim for fraudulent concealment in the pretrial order. Local 238 objected, as Plaintiff had not previously pleaded a separate claim for fraudulent concealment; she had only included it as a theory to toll the statute of limitations. The Court agrees with Local 238. Plaintiff has not asserted a claim for fraudulent concealment in this case, and she is not allowed to add it through the pretrial order. The Court will consider her fraudulent concealment argument only as it relates to the timeliness of her DFR claim.

on her age when it replaced her as a union steward with a younger woman and denied her access to union financial records after she retired. The Court considers each of these claims separately.

### A. DFR Claim

#### 1. DFR Claim for Failure to Handle Grievances and Update Status.

Plaintiff's first claim is a DFR claim for failure to handle the grievances she filed as a steward and to update her on their status. Local 238 contends that this claim is untimely. The Court already addressed a similar claim against the national union based on timeliness.

DFR claims have a six-month statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983); *Carlton v. Local No. 7 United Food & Comm. Workers Int'l Union*, 43 F. App'x 289, 295 (10th Cir. 2002). A claim accrues when an aggrieved person "knows, or through the exercise of reasonable diligence, should have known of that union's decision or action." *Carlton*, 43 F. App'x at 295. It is unnecessary that a claimant know "all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993). A claimant knows of a DFR claim at the time she files an NLRB charge challenging the same conduct. *See Poletto v. Battaglino*, 2024 WL 1757316, at *2 (10th Cir. 2024). Plaintiff bears the burden to show that a basis for equitable tolling exists. *Cash v. City of Durant*, 2024 WL 1573947, at *3 (10th Cir. 2024).

Plaintiff filed a charge with the NLRB against the national union in July 2023. She then filed a charge against Local 238 in December 2023. Both of these filings show that Plaintiff had notice of the facts constituting her DFR claim. Even assuming that Plaintiff's time to file did not begin until December 2023 with her second NLRB charge, she had until June 27, 2024 to file suit. Plaintiff did not file her complaint until August 12, 2024. Plaintiff's DFR claim is time-barred.

Plaintiff tries to avoid summary judgment by arguing fraudulent concealment. She alleges that she had to make a FOIA request from USPS because the local and national unions concealed the status of her grievances. Then she had to wait for a response to her FOIA request before she could know what Local 238 was doing with her grievances.

Fraudulent concealment tolls the statute of limitations when a defendant uses fraudulent means to prevent discovery of the breach of a duty via due diligence. *Ballen v. Prudential Bache Sec.*, 23 F.3d 335, 337 (10th Cir. 1994). But a plaintiff must show both a "lack of knowledge of the facts constituting [her] claim" and that a defendant took "affirmative acts leading a reasonable person to believe that [she] did not have a claim for relief." *In Re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1227-28 (D. Kan. 2006) (citing *Clulow v. State of Okla.*, 700 F.2d 1291 (10th Cir. 1983)) (internal quotes omitted).

Plaintiff's tolling argument does not hold water. She admits that she knew in December 2023 that she was not being given information she wanted and that Local 238 was not handling her grievances. This is direct knowledge of the facts constituting her claim. Even if Local 238 withheld and concealed information before December 27, 2023, Plaintiff had knowledge of her claim by that date. She even filed a detailed affidavit with the NLRB dated August 31, 2023, explaining her complaints in detail. But she did not file this case until August 2024. Her DFR claim is untimely under any calculation. No reasonable jury could find in her favor. The Court grants summary judgment in Local 238's favor on Plaintiff's DFR claim.

### 2. Merits of Plaintiff's DFR Claim.

The Court need not proceed with additional analysis on Plaintiff's DFR claim. But it would not matter if the Court addressed the claim on its merits. Courts are highly deferential to the actions of unions. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571 (1976). They refrain from

substituting their own judgment for that of the union. *Young v. United Auto. Workers Labor Emp. & Training Corp.*, 95 F.3d 992, 997 (10th Cir. 1996). A union may settle or withdraw a grievance so long as it remains within its good faith discretionary power. *Vaca v. Sipes*, 386 U.S. 171, 190-92 (1967). A plaintiff seeking to establish a DFR claim must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." *Aguinaga v. United Food & Com. Workers Int'l Union*, 993 F.2d 1463, 1470 (10th Cir. 1993). Ordinarily a union's representation must be "grossly deficient," or the union must "recklessly disregard" the employee's rights to state a claim. *Amburgey v. Consolidation Coal Co.*, 923 F.2d 27, 29 (4th Cir. 1991) (citation omitted). An employee attempting to show bad faith on the part of the union must show "fraud, deceitful action or dishonest conduct." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 299 (1971).

The uncontroverted and properly supported evidence does not come close to meeting this high standard. Even if Plaintiff's claim were timely, she has not pointed to any evidence that would show Local 238's actions were arbitrary, discriminatory, or in bad faith. She has not presented admissible evidence of fraud, deceitful action, or dishonest conduct. Local 238 had the discretion to resolve the grievances in a reasonable way.[4] And Plaintiff has presented no evidence that her grievances were meritorious. To be meritorious, she would need to show that USPS breached the Collective Bargaining Agreement. But Plaintiff has not even submitted a copy of the Collective Bargaining Agreement or proffered evidence showing that USPS breached the agreement. *See Vaca*, 386 U.S. at 191 ("Though we accept the proposition that a union may not arbitrarily ignore

---

[4]    Alternatively, Plaintiff does not have evidence to support the merits of a DFR claim against Local 238 for failure to inform her about the status of the grievance appeals. It is uncontroverted that Local 238 was only responsible for Steps One and Two of the grievance process. The Line H grievances that Plaintiff filed had moved beyond those steps and were on appeal. It was the national union, not the local union, that was responsible for processing the grievances at the time Plaintiff complains of their practices.

a <u>meritorious</u> grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." (emphasis added)).

Plaintiff has failed to show a genuine issue of material fact over Local 238's treatment of the grievances she filed. Summary judgment is appropriate on this alternative basis.

### B.    Age-Discrimination Claims

The Court next turns to Plaintiff's age-discrimination claims. She contends that she was removed from her steward position and replaced with a younger person because of her age. And she claims that Local 238 denied her membership rights because of her age. The record contains no evidence from which a reasonable jury could find in Plaintiff's favor on either claim.

### 1.    Removal from Steward Position.

First, the Court considers Plaintiff's removal from her steward position. Plaintiff does not have direct evidence of discrimination, so the *McDonnell Douglas* burden-shifting framework applies to this claim.[5] This framework has three steps. First, a plaintiff must make a prima facie case.[6] *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). Second, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its action. *Id*. Third, the burden shifts back to the plaintiff to show that the "legitimate" and "non-discriminatory" reasons the defendant offered were pretext for unlawful discrimination. *Id*. "A plaintiff shows pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could

---

[5]    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[6]    A plaintiff establishes a prima facie age discrimination case by showing (1) she belongs to the ADEA-protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) her employer treated her less favorably than other employees outside the protected class. *Cox v. Dex Media, Inc.*, 2022 WL 3079102, at *3 (10th Cir. 2022) (citing *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010)). But-for causation is the standard to succeed on an ADEA discrimination claim. *Id.*

11

rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (internal quotation and citation omitted). Typical methods are "direct evidence that the defendant's stated reason for the adverse employment action was false," and evidence of differential treatment from "other similarly-situated employees who violated work rules of comparable seriousness." *Id*. at 1167-68 (citation omitted).

Even if Plaintiff had evidence to establish the elements of a prima facie case (she does not),[7] Local 238 provides a legitimate, non-discriminatory reason for Plaintiff's removal as union steward: she failed to respond to members and leadership of Local 238 for several months after a second steward had been appointed to serve with her. The burden then shifts to Plaintiff to show evidence that Local 238's reason for removing her was pretextual. Plaintiff has presented no evidence of pretext. The only evidence Plaintiff notes is the fact that a younger person remained a union steward while Plaintiff was removed. She also testified that Fitzpatrick called her an "old lady" on one occasion. But there is no context or timing associated with this alleged quote. There is nothing to tie it in any way to Plaintiff's eventual removal. No reasonable jury could find this evidence sufficient to show that age was the determining factor in Plaintiff's removal. Plaintiff fails to create a genuine issue of material fact for age discrimination based on her removal as union steward.

### 2.    Deprivation of Membership Rights.

Plaintiff also claims that Local 238 denied her membership rights because of her age. Plaintiff claims that Local 238 denied her membership status and the right to see certain union

---

[7]    The Court questions whether Local 238 constitutes Plaintiff's "employer" at all for purposes of the ADEA. She was a volunteer union steward, appointed by the union president. Nevertheless, the Court assumes for purposes of this motion that Plaintiff can bring an ADEA claim against the union as her employer. Plaintiff also must show but-for causation but admits that age was not the only reason for her removal.

records. But these are not a proper claim under the ADEA (or, for that matter, a proper DFR claim). Instead, Plaintiff's recourse, if any, would be under the Labor-Management Reporting and Disclosure Act (LMRDA) because they are internal union matters governed by the LMRDA's Bill of Rights and related provisions. *See generally* 29 U.S.C. § 411 et seq.; *Ass'n of Contracting Plumbers, Inc. v. Local Union No. 2 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus.*, 841 F.2d 461, 469 (2d Cir. 1988) ("[A] matter that involves only the relationship between the union and its members and does not also involve the employer is viewed as an internal union matter that does not give rise to a duty of fair representation.").

In any event, Plaintiff has not presented evidence that she was denied access to records when she was a member of the union. The uncontroverted evidence shows that Plaintiff was not a member when she requested access to union records. Membership is a requirement under 29 U.S.C. § 431. This is an alternative basis for summary judgment on Plaintiff's claim.

## V.    CONCLUSION

The Court understands that Plaintiff wants closure and a preferred outcome on the grievances she filed on behalf of union members before she retired. But she waited too long to bring her DFR claims against Local 238, and there is no evidence that would support a tolling argument in her favor. She has not presented evidence from which a reasonable jury could find that her DFR claim has merit or that she was discriminated against because of her age. And in any event, her claims that Local 238 should have let her review records are not properly brought under the ADEA, and she was not a member of the union when she asked to review them. The Court has construed Plaintiff's briefing mindful of her status as a pro se litigant. But that status does not relieve her of the obligation to follow the federal and local rules. She has not demonstrated a triable

issue for a jury in this case. The Court grants Local 238's motion for summary judgment and dismisses Plaintiff's claims against Local 238 with prejudice.

THE COURT THEREFORE ORDERS that Local 238's motion to dismiss or for summary judgment (Doc. 74) is GRANTED. Local 238 is dismissed with prejudice from the case.

THE COURT FURTHER ORDERS that Plaintiff's motion to supplement (Doc. 98) is DENIED.

The case is closed.

IT IS SO ORDERED.

Dated: June 1, 2026                         s/ Holly L. Teeter
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE

14